Houston & Texas Central Railway Company et al. v.
Felix P. Bath & Co.

Delivered May 28, 1897.

**1. Receiver of Railroad Company — Possession After Order of Discharge—Liability of Purchaser of Road.**

Where the receiver of a railroad, for the benefit of a purchaser of the property for himself, continues, with leave of the court, his possession and operation of the road after his sale, the confirmation thereof, and the expiration of the time fixed by the court for the delivery over of the property, the purchaser is liable for damages that occur during such period to a shipment of freight over the road.

**2. Common Carrier—Foreign Shipment—Burden of Proof in Loss by Fire.**

A common carrier, in a foreign shipment, not governed by the statutes of this State, may stipulate against liability from loss by fire, unless the negligence of the carrier or its servants caused or contributed to the loss; yet the burden is upon such carrier to show that the loss occurred by fire, and without negligence on its part.

**3. Evidence—Impeachment of Witness by His Affidavit.**

A witness who testifies on the stand that he does not know the cause of a fire can not be impeached by his affidavit theretofore made, stating that he did not know the cause of the fire, but supposed it was caused by a passing engine; but the error in admitting such affidavit is not necessarily (nor in this case) a material one.

**4. Receiver—Proof of Discharge.**

Where there is no evidence in the record showing the discharge of a receiver by the court, proof of such fact can not be supplied by reference to cases cited in the brief of counsel, wherein such discharge is made to appear.

**5. Common Carrier—Proof of Loss.**

Where plaintiffs' action against a common carrier for a failure to deliver certain cotton is based throughout on the theory that it was destroyed by fire, as shown by his testimony and otherwise, he is not entitled to judgment against the carrier on its common law liability merely because it has failed to show that the cotton was in fact destroyed by fire without its negligence, which under its contract was an excepted risk.

APPEAL from Dallas. Tried below before Hon. Edward Gray.

*R. De Armond* and *Alexander, Clark & Hall,* for appellants.—1. The property of the Houston & Texas Central Railway Company being placed in the hands of Dillingham, receiver, by the Federal court, and being sold September 8, 1888, to F. P. Olcott under foreclosure, and the sale being confirmed December 4, 1888, by said court, but possession not delivered to the purchaser until April, 1893, and upon delivery of said property, the purchaser having conveyed and then and there delivered the same to the defendant, the Houston & Texas Central Railroad Company, a corporation organized under the laws of the State of Texas, and the claim of Felix P. Bath & Co., plaintiffs herein, having accrued in, to wit, October, 1892, for the value of certain cotton burned while being transported by said receiver, the cause of action having accrued between said sale and the delivery of the property, as aforesaid; and this action having been brought thereon in the State court on the 24th day of February, 1893, against said receiver, and the defendant, the Houston & Texas Central Railroad Company, having been thereafter made a party thereto, on October 9, 1894, after the delivery of the railroad, as afore-

said, the defendant, the Houston & Texas Central Railroad Company, was, under the pleadings, liable to the plaintiffs, (1) only to the extent improvements were made by the receiver with funds derived from the earnings of the road between the sale of the same and its delivery, as aforesaid, to defendant; (2) or in the event the property was returned to the original owner, the Houston & Texas Central *Railway* Company: and plaintiffs failing to make any proof whatever, (1) of such improvement being made, or (2), of the property being returned to the original owner, verdict and judgment thereon should have been rendered in favor of, instead of against, the Houston & Texas Central *Railroad* Company. Crawford v. Railway, 33 S. W. Rep., 534; Railway v. Crawford, 31 S. W. Rep., 176.

2.   The witness stating in the affidavit that the origin of the fire was unknown to him, the suppositions of others made to him, and stated in the affidavit made by the witness over four months after the fire, as to the fire originating from the sparks a passing engine, were not admissible to show the origin of the fire, or to impeach the witness, or for any other purpose. Railway v. Dawson, 29 S. W. Rep., 1106; Tel. Co. v. McMillan, 25 S. W. Rep., 821; 1 Greenl. on Ev., secs. 98, 99.

*Morgan & Thompson*, for appellees.—1.   Although at the time that plaintiffs' cause of action accrued the defendant Dillingham was operating the railroad nominally as receiver, the appellant railroad company was liable for his acts as such receiver; because at the time of the accrual of plaintiffs' cause of action, and for more than two years prior thereto, said company was and had been the owner of said railroad, having acquired the same under and by virtue of a foreclosure sale made under a decree rendered in the suit in which said receiver had been appointed, and although the court had long been ready and willing to deliver said road to said company, and had instructed its receiver to so deliver it, said company had declined to receive it and was unlawfully permitting and procuring the said receiver to retain possession of and operate its said railroad; and the said Dillingham, although nominally operating said railroad as receiver, was in truth and in fact operating it as the agent of said railroad company; and under these circumstances the said railroad company is liable for the acts of its said agent while operating its said property irrespective of what liability was imposed upon it by the terms of the decree under which it became the owner of the property. Railway v. Gay, 86 Texas, 571, 603; Railway v. Johnson, 76 Texas, 421, 430, 434, 435; Railway v. Johnson, 151 U. S., 81.

2.   The burden of proof was on appellants to show that the Corsicana cotton was destroyed in the Mud Creek fire, and further, if it was so destroyed, to show clearly how the fire occurred and that the loss occurred without negligence on the part of the carrier; and while the testimony, under our view of it, positively established appellants' negligence, still to say the least of it the record shows that, under all the facts and circumstances, it so far failed of establishing appellants' defense as to

preclude any interference with the jury's finding. Railway v. Mfg. Co., 79 Texas, 26; Railway v. Wilson, 79 Texas, 371, 376; Railway v. Watkins, 88 Texas, 20, 25.

3. The court below erred in overruling appellees' motion for judgment non obstante veredicto, because the verdict in appellants' favor as to the cotton which they allege was destroyed, without negligence on their part, in the Thornton fire was rendered upon appellants' plea of confession and avoidance upon a state of facts which as shown by their evidence wholly fails to support said plea, and which, if it had been averred in said plea, would have rendered the same demurrable upon a general demurrer. Hays v. Stone, 36 Texas, 181, 186; Brewer v. West, 2 Texas, 376; Brownsville v. Bass, 43 Texas, 440, 452; Templeman v. Gibbs, 25 S. W. Rep., 736, 737; Railway v. Strycharski, 37 S. W. Rep., 415-417.

LIGHTFOOT, CHIEF JUSTICE.—We adopt appellees' statement of the case, as follows: This suit was by appellees to recover damages for the nondelivery of certain cotton shipped by them from different points in Texas over the Houston & Texas Central Railroad, to be delivered to them or to their order at Liverpool, England.

At the time of the shipments and at the time this suit was brought, the said road was being operated by Charles Dillingham, nominally as receiver of the Houston & Texas Central *Railway* Company, he having been appointed such receiver in a suit in the United States Circuit Court for the Eastern District of Texas, and the bills of lading issued for the cotton were issued by said Dillingham, as such receiver. All of the cotton was shipped during the month of October, 1892. This suit was begun in the District Court of Dallas County, Texas, February 24, 1893. Long prior to any of the aforesaid shipments, the railroad had been sold, under a decree of foreclosure rendered in the suit in which said Dillingham had been appointed receiver, and had been conveyed by F. P. Olcott, who was the nominal purchaser at said sale, to the Houston & Texas Central *Railroad* Company, one of the defendants in this suit, and which is now in possession of and operating said property. But notwithstanding said sale and conveyance, said Dillingham continued to operate the road for a long time thereafter, and it was not until after the institution of this suit that there was any formal delivery of the road by him to his codefendant. Although he has now surrendered the possession of the road, the record does not show that Dillingham has been discharged as receiver. In this suit, as originally brought, Dillingham, as receiver, was the sole defendant.

By amendment, the Houston & Texas Central Railroad Company, which was then and is now the owner of the road, was made a codefendant with the receiver, and judgment was asked against both defendants. The grounds upon which judgment was sought and obtained against the railroad company will be stated hereafter.

The defendants contend that the defendant railroad company is not liable in any event, even if the receiver is; and, moreover, that neither

one is liable, because the bills of lading contain a stipulation exempting the carrier from liability if the loss is occasioned by fire, and they aver that the cotton on account of which this suit was brought was destroyed by fire, without any negligence on their part.

There were four bills of lading: one for 250 bales of cotton, shipped at Waxahachie, October 5, 1892; one for 200 bales, shipped at Corsicana, October 14, 1892; one for 100 bales, shipped at Corsicana, October 14, 1892, and one for 100 bales, shipped at Plano, October 29, 1892. All of this cotton was described in the bills of lading by the marks and brands upon the several bales.

Of the 650 bales so shipped, 270 bales were not delivered to the consignees. These consisted of 56 bales of the Waxahachie shipment; 116 bales of the Corsicana shipment of 200 bales, 40 bales of the Corsicana 100 bales shipment, and 58 bales of the Plano shipment.

Defendants aver that the Corsicana cotton was destroyed by fire in a wreck on their road near Mud Creek; that the Plano shipment was destroyed by fire on their road near Thornton, and that the Waxahachie shipment was damaged and partially destroyed by fire on their road at Hearne. They further aver that the cotton which was damaged but not destroyed by the fire at Hearne was sold by the receiver and the proceeds of this sale paid to the plaintiffs. This payment was made and received, however, under an express agreement that it should not prejudice any right of either party to sue or defend on account of the balance of plaintiffs' claim for any cotton which defendants aver was so damaged and destroyed at Hearne. The case was tried before a jury. There was no controversy as to the facts upon which the plaintiffs sought to hold the railroad company liable, and the court, in substance, instructed the jury that if either defendant was liable both were. There was no controversy as to the facts of the shipment or nondelivery of the cotton, or of the amount which plaintiffs were entitled to recover, if entitled to recover anything, and the jury was so instructed. The only controverted questions of fact were, as to whether or not the evidence sustained defendant's plea that the cotton had been destroyed by fire without negligence on their part; and in submitting this issue, the court, following defendants' pleas, instructed the jury to find separately in respect to the three fires, to wit, the Mud Creek fire, the Thornton fire, and the Hearne fire.

The jury returned a verdict for plaintiffs in respect to the cotton alleged to have been burned at Mud Creek and at Hearne, and for defendants in respect to the cotton alleged to have been burned at Thornton.

The plaintiffs filed a motion for judgment in their favor for the value of all the cotton, notwithstanding the verdict in reference to the cotton alleged to have been burned at Thornton. But this motion was overruled and judgment rendered in accordance with the verdict. Defendants filed a motion for a new trial, which was overruled, and they have now appealed from said judgment.

It is not controverted that plaintiffs shipped the cotton over the line of the Houston & Texas Central Railway Company, as alleged in their

pleading, and that appellant Charles Dillingham was receiver of said company at the time of such shipment. That on May 4, 1888, a decree was rendered by the United States Circuit Court, at Galveston, where the receivership was pending, ordering the sale of the properties of said railway company by such receiver; that the sale was made September 8, 1888, to F. P. Olcott, and was confirmed December 4, 1888. That said Olcott purchased the property for the use and benefit of the Houston & Texas Central Railroad Company, which company was practically a reorganization of the Houston & Texas Central Railway Company. That after the purchase, the property was allowed by the purchaser, the Houston & Texas Central Railroad Company, to remain in the hands of Charles Dillingham, receiver, and be operated by him for the use and benefit of the latter company until such time as it might be convenient for it to resume possession. While such property was being thus operated by Charles Dillingham, with the consent of the railroad company, and for its benefit, the cotton was shipped by appellees, as set out in their petition, and a portion of it failed to reach its destination. The number of bales and their value so failing to reach the consignees are correctly set out in the plaintiffs' petition. After this suit was brought the property was turned over by Charles Dillingham to the purchaser. Permission was granted by the said United States Circuit Court to plaintiffs to prosecute this suit against the receiver, and the record does not disclose that the accounts of the receiver have ever been closed, or that he has ever been discharged.

The following statement from appellees' brief is adopted: On December 1, 1890, said F. P. Olcott presented to said court a petition in which he averred that the receiver, Dillingham, had in his possession money which he had received from the proceeds of land sales since the date of petitioner's purchase, and to which petitioner was entitled by reason of his purchase, and prayed for an order directing the receiver to pay over to the petitioner, or his assigns, all such proceeds of land sales which had come into the receiver's hands since petitioner's purchase on September 8, 1888.

On December 13, 1890, the court made the following order upon said petition: "Considering the foregoing petition and the fact that the records of this court show that the sale made of the Houston & Texas Central Railway property to Frederick P. Olcott, the foregoing petitioner, has been duly confirmed, and deeds thereof passed in accordance with the decree rendered in the case.

"And considering that the temporary restraining order granted in the suit of Cary et al. v. The Houston & Texas Central Railway Company, has been dissolved, and no reason appearing to the court why the property as aforesaid sold to said Frederick P. Olcott should be longer retained in the possession of the court, it is ordered that the receiver in this case, Charles Dillingham, Esq., do turn over to said Frederick P. Olcott, or his assigns, upon the application of said Olcott, or his assigns, and within the next thirty days, all the railroad property, lands, cash, etc.,

covered by the purchase of the said Frederick P. Olcott, and the decree affirming and approving the sale.

"It is further ordered, that if said Frederick P. Olcott, or his assigns, shall not apply for and receive the property within the said thirty days, that thereupon said receiver is directed to report the fact to this court, that other proper order may be made in the premises."

Then follows a clause, which was subsequently amended, specifying that the property was to be delivered to the purchaser subject to and charged with the payment of certain claims. And then follows the concluding clause, in the usual form, that the bills are retained for the purpose of investigating such claims, and any other necessary purpose.

On December 24, 1890, the said F. P. Olcott presented to the court his petition, in which he averred that the foregoing order of December 13th was erroneous, in that it did not in all particulars conform to the provisions of the final decree of May 4, 1888, under which the property had been sold; that he desired to have it amended so that it would conform to said final decree, and to that end he prayed the court to strike out the last two clauses of the said order of December 13th, and substitute in lieu thereof the following:

"It is further ordered, that such property, nevertheless, shall be delivered to and received by said Olcott, or his assigns, subject to and charged with the obligations and liabilities, contractual or resulting from tort or otherwise, incurred by the receiver or receivers appointed by this court in the above entitled cause, and as the same may be fixed and determined by this court; and also subject to the rights which this court reserves to charge upon the property or any part thereof the payment of any amounts that may be found and determined by the court to be due and payable by reason of intervening petitions filed in this cause prior to the decree entered herein on the 4th day of May, 1888, and to be entitled to priority over mortgage debts, above referred to, and subject to the further condition that the court may, if needful for the protection of the receiver's obligation and liabilities, or the amounts due by reason of such intervening petitions, resume possession of said property.

"The bills in this cause are retained for the purpose of investigating such obligations, liabilities, and petitions, and for such other purposes as may seem needful."

On the same day, December 24, 1890, the court amended its aforesaid order of December 13, 1890, in exact accordance with said petition. In making said amendment the court reiterates that no reason appears to the court why the property should be longer retained in the possession of the court, and therefore orders its receiver to turn the property over to Olcott or his assigns within thirty days, and further orders that if within thirty days they do not receive the property the receiver shall report the fact to the court.

At some time between December 24, 1890, and February 11, 1891, the receiver Charles Dillingham made a report, in which he says:

"Now comes Charles Dillingham, receiver in this cause, and in obedi-

ence to the mandate of the order herein entered on the 24th day of December, 1890, reports to the court that Frederick P. Olcott, purchaser of the property of the defendant in this cause, to whom partial delivery of the same was made under said order, has not taken possession of the balance of the property of the said Houston & Texas Central Railway Company remaining in the possession of the receiver.

"He further reports, that said Olcott has assigned the said railway and appurtenances to the Houston & Texas Central Railroad Company, a corporation formed for the purpose of purchasing the said railroad, as provided in the plan of reorganization; that said railroad company has issued its stock and bonds with which to pay for the property purchased; that mortgages have been executed and placed upon the property and are now in process of being recorded, and he is informed and believes that said company will require further delay of at least thirty days in which to perfect their organization, get their mortgage properly recorded, and be ready to take full possession of their property; and the said Dillingham requests the instructions of the court as to what he is to do in the premises."

On February 11, 1891, the said Frederick P. Olcott presented to the court a petition in which he says: "That as appears by the records herein, your petitioner purchased the property of the Houston & Texas Central Railway Company, as trustee of the plan of reorganization. That said plan of reorganization has been delayed by vexatious litigations from the stockholders of the Houston & Texas Central Railway Company, by the financial disturbances of the country, and a combination of circumstances which prevented the organization of the new Houston & Texas Central Railroad Company to that point of efficiency where it could with propriety assume active control of the railways and their appurtenances so purchased.

"That said new Houston & Texas Central Railroad Company has been organized, the mortgages provided by the plan of reorganization have been executed and placed upon the property, and are now in process of being recorded and made legal and binding, and that it will require at least a delay of thirty days to enable the said company and your petitioner to take and receive delivery of the said property from Charles Dillingham, receiver herein.

"That if your honor should compel the said Dillingham to deliver possession of said property to petitioner at this time, it would be a serious embarrassment to your petitioner and a serious embarrassment to the public, and might lead to very many complications injurious to the interests of all parties concerned.

"Wherefore your petitioner prays that your honor may enter an order herein directing the said Charles Dillingham, receiver, to hold the property in his possession until 15th day of March, 1891, and if said property is not by that time taken possession of by your petitioner, then that the said Charles Dillingham shall report to the court for further orders and instructions." This was sworn to.

On February 12, 1891, the following order was made upon the foregoing report of the receiver and petition of Olcott, to wit:

"The foreging petition and affidavit, as well as the report of C. Dillingham, Com'r, considered, as well as the proceedings heretofore had in this cause. It is ordered that Charles Dillingham, receiver herein, be instructed to retain possession of the property in his possession as receiver, under the orders heretofore entered in this cause, until the 15th day of March, 1891, with leave to the purchaser to come forward at any time between this date and the said 15th day of March, 1891, and take possession of said property from the said Charles Dillingham.

"It is further ordered, that if the said purchaser does not, on or before the 15th day of March, 1891, come forward and relieve the said Charles Dillingham of possession of the said property, that said Dillingham shall report to the court for further instructions in the premises." (Signed) Don A. Pardee, Circuit Judge.

The extension of time granted by the foregoing order of February 12, 1891, expired more than a year and a half before appellees' cause of action accrued, and more than two years before appellants took formal possession of the property. If this delay in taking possession was with the permission of the court, the record fails to show it. The record does not show that any further order was made in that cause until April 4, 1893, when an order was made which will be hereafter set out in full. That order is predicated upon a petition presented by said F. P. Olcott, in which he says:

"The petition of Frederick P. Olcott, who is a resident and citizen of the State of New Jersey, on behalf of himself and his assigns, with respect, represents:

"That he and his assigns are about to take possession of the properties heretofore purchased by him at the sale under final decree of this court.

"That this honorable court has heretofore, to wit, on or about the 24th day of December, 1890, rendered an order in reference to the delivery of said properties to your petitioner, but your petitioner desires that said order be amended and resettled as hereinafter prayed for.

"Wherefore, your petitioner prays that your honor will amend and resettle said order providing for a certain date within which all claims and demands against the said Houston & Texas Central Railway Company shall be presented to your honor by intervention in said cause, or otherwise as you may direct, and after which time said claims and demands shall be declared stale, and your petitioner prays for all further and necessary orders in the premises, and for general relief."

Then follows the order of April 4, 1893, as follows: "The court considering the foregoing petition, and being fully advised, it is ordered that the order heretofore rendered in this cause on the 24th day of December, 1890, on the petition of said Frederick P. Olcott, for the amendment and resettlement of the order of December 13, 1890, rendered in this cause, be and the same is hereby amended and resettled by adding thereto the following clauses, to wit: It is further ordered that all claims and

demands of every nature arising out of the operation and management of the properties purchased by Frederick P. Olcott, at the sale made in the above entitled cause pursuant to final decree of this court herein, in respect of which any liens upon the funds derived from said sale, or money or property which came to the hands of the receiver or receivers, or upon the property sold to the said Olcott is claimed, whether against said receiver or receivers or against the mortgagor company herein, shall be presented and prosecuted by intervention in this court, prior to the 1st day of October, 1893, and all such claims and demands as may not be presented on or before the date last mentioned above by intervention as aforesaid, shall be declared stale, and shall not be charged upon or enforced against the property herein ordered to be delivered to said Olcott or his assigns, or said funds derived from said sale, or said money or property which came to the hands of the receiver or receivers.

"But this order is not to be understood or construed as extending or enlarging in anywise the right reserved by the court by decrees herein to charge upon the property sold or any part thereof, the payment of amounts that may be found and determined by the court.

"It is further ordered, that the clerk of this court do publish a notice of the time and manner in which claims may be presented as herein ordered, etc.

"It is further ordered, that no formal surrender of the custody or delivery of possession of any property, assets, books, vouchers, or other things held by said receiver shall be necessary, but this order shall operate to put said purchaser F. P. Olcott and his assigns in the lawful possession thereof; and all employes having the actual custody of said property, assets, books, vouchers, or other things held by or under said outgoing receiver as such, and all persons connected with the operation of the railways of the defendant railway company in any manner shall hold the same for said purchaser and his assigns and subject to his and their authorized directions and orders in reference thereto.

"The bills in the above entitled cause are retained for the purpose of investigating all claims and demands in this order referred to, and the liabilities and obligations therefrom resulting, and for the purpose of examining and settling the accounts of the receiver herein, in order to have full, complete, and final settlement of said receivership, and for such other purposes as may be needful." (Signed) A. P. McCormick, Circuit Judge.

At the time the foregoing order was made this suit was pending; and in view of the fact that any judgment appellees might recover herein against the receiver would, under the terms of said order, be a stale demand unless they intervened prior to October 1, 1893, appellees on September 22, 1893, presented to the Hon. A. P. McCormick, United States Circuit Judge, who made said order, their petition in intervention in said suit in the United States court, in which they set forth the pendency of this suit in the District Court of Dallas County, Texas, against the

said receiver, and that whatever judgment they might recover would be a proper claim to be paid as a part of the expenses of said receivership, but that they could not obtain a judgment until after October 1, 1893, and could not therefore comply literally with the aforesaid order and present their claim to the court in which said receivership was pending before October 1, 1893, unless they waived their right to a judgment in this suit, which they were unwilling to do, and prayed for an order extending time for the presentation of their claim until ninety days after the final determination of this suit.

On September 28, 1893, the following order was made upon said petition: "The parties have leave to file the foregoing petition in equity suit No. 198, therein designated. They have leave to prosecute their suit in the State court mentioned in their foregoing petition, and a reasonable time will be allowed for prosecuting their said suit in the State court. And the presenting and filing of this petition with the clerk at Galveston by the 1st of October will be considered a compliance with the order referred to in this petition." (Signed) A. P. McCormick, Circuit Judge. The petition was filed with the clerk on September 30, 1893.

The only evidence which appellants offered in explanation of the fact that from March 15, 1891, until April, 1893, the operation of the railroad was continued in the name of the receiver, notwithstanding he had been ordered to turn said property over to its owners, was a copy of three orders made in the case of Stephen W. Cary et al. v. Houston & Texas Central Railway Company et al., and which was read in evidence over plaintiffs' objection.

The first was an order by one of the justices of the Supreme Court of the United States, made December 9, 1892, enjoining Chas. Dillingham, receiver, from surrendering possession of the railroad to any one pending the decision by said Supreme Court of an appeal in said suit of Cary v. Houston & Texas Central Railway Company et al.

· The second was an order made March 9, 1893, modifying said first order, but continuing the injunction in force.

The third was an order made March 29, 1893, vacating both of the former orders.

What the suit of Cary v. The Houston & Texas Central Railway Company et al. was about, or what connection, if any, it had with the suit No. 198 in which the receiver had been appointed, or why the judges of the Supreme Court thought proper to make or vacate said last mentioned orders, is not shown by anything in this record. But it does appear that these orders were not made until nearly two years after March 15, 1891, and that none of them were made until after plaintiffs' cause of action had accrued.

Our conclusions upon the different issues presented by appellants in their brief will more fully appear under the different assignments of error considered.

1. Under the sixth assignment of error appellants contend that in no event is the Houston & Texas Central Railroad Company liable, because

the property was lost while the road was being operated by the receiver after the sale and confirmation, and before delivery to the purchaser, and because no betterments or improvements were shown during that period. In support of this contention they cite the cases of Crawford v. Railway, 33 Southwestern Reporter, 534; and Railway v. Crawford, 31 Southwestern Reporter, 176. That case, as reported in 31 Southwestern Reporter, 176, embraced answers of the Supreme Court to certified questions, and as reported in 33 Southwestern Reporter was the decision of the court on final appeal. The opinion of Judge Brown in that case in answer to the certified questions presented is a clear and comprehensive statement of the law governing them, and authoritatively settles the following questions: (1) That the claim of the party in that case not having been presented to the United States Circuit Court within the time and under the conditions prescribed by the order of the court, the purchaser was not liable under the order of that court. Olcott v. Hendrick, 141 U. S., 543. (2) That the purchaser of the property, under the facts there stated, would be liable to the extent of betterments placed on the road after the sale and confirmation, and before the delivery of the property to the purchaser, and no such betterments being there shown, the liability of the purchaser was not fixed. The position of the court is thus clearly stated: "In the opinion heretofore given by this court upon a certified question in this case, it was held, in substance, that the purchaser, Olcott, and the railway company purchasing from him, would be liable for claims against the receiver accruing between the date when the title was conveyed by the receiver to Olcott and the time when the property was delivered to the Houston & Texas Central Railroad Company, if it should appear that the receiver, during said time, applied the revenues derived from said earnings of the road in his hands during that time to the permanent improvement of the property. But the plaintiff had no claim upon the earnings of the road in the hands of the receiver accruing prior to the time the title passed to Olcott, because his injury occurred subsequent to that time; therefore, any use made of such earnings would not be a diversion of a fund to which he was entitled. Moreover, if the improvements were made before the conveyance to Olcott by the receiver, then his purchase of the property included the improvements theretofore made, and he and his vendee would not be liable, for the reason that, having paid for the improvements in the purchase of the road, they would not be receiving a benefit from such improvements. The evidence in this case did not show the date at which the improvements upon the road were made, nor the time during which the funds thus applied were earned; that is, whether it was by the earnings before or subsequent to the sale and conveyance of the property to Olcott. As plaintiff's right to recover against the defendant in this case depended upon the fact that improvements were made by the receiver after the sale and conveyance, by the application of earnings arising subsequent to that sale, it was necessary to allege and prove these facts to entitle him to a judgment against the defendant." 33 S. W. Rep., 536.

The facts, as they appear in this case, are very different from the facts presented in the case above adjudicated, and the liability of the railroad company is sought to be fixed upon a different ground.

In the case before us, it does not appear that the receiver has ever been discharged; and the plaintiffs appeared in the United States Circuit Court and obtained an order allowing them to prosecute their suit in the State court as against the receiver. It is insisted by appellees that the railroad company is also liable, because at the time the cotton was shipped and not accounted for by appellants, the road had been sold, the sale confirmed, and the property ordered by the court to be turned over to the purchaser, and that it was held and operated by the receiver as agent for such purchasers, and for their own convenience. These facts are well established by the record. It appears clearly that the sale was confirmed December 4, 1888. On December 7, 1888, Easton and Rintoul were discharged as receivers, and that Charles Dillingham was continued as sole receiver. On December 22, 1888, F. P. Olcott applied to the court for a modification of the order requiring him to pay the purchase money within twenty days after confirmation; that a deed had been tendered him not satisfactory in form, and on the same day the order was modified, and he was granted twenty days from December 23, 1888, within which to pay the purchase money. On January 18, 1889, the deed was executed and delivered to Olcott for the property bought by him at the foreclosure sale. On August 1, 1889, F. P. Olcott and his associates, in pursuance of their plan of reorganization, obtained a charter from the State of Texas for the Houston & Texas Central Railroad Company. On April 1, 1890, F. P. Olcott conveyed the property to the Houston & Texas Central Railroad Company.

The balance of the statement we have heretofore given.

From the foregoing facts it clearly appears that when the cause of action in this case accrued, Charles Dillingham was operating the road at the instance and for the convenience of the purchaser, the Houston & Texas Central Railroad Company, who had bought it and received its deed of conveyance, and long after the Circuit Court had repeatedly ordered the property to be delivered. The fact that the justices of the Supreme Court, after the cause of action in this case had accrued, made a temporary restraining order in another case, could not affect the question involved here. If at the time this cause of action accrued the property was held and operated by the receiver, as the agent of the railroad company, the latter is bound. A purchaser of property from a receiver can not escape responsibility by lingering in the shadow of the court, for his own convenience, after the purchase has been fully completed.

In the case of Railway v. Gay, 86 Texas, 605, our Supreme Court fully discusses the question of a collusive receivership where there is no real controversy, and says: "And it would be a perversion of justice to hold otherwise, than that a receiver appointed under such circumstances is the agent of the person or corporation whose property may be thus collusively placed in his possession."

The same rule applies to the retention of property by a receiver, at the instance and for the benefit of a purchaser, after the court has disposed of it and ordered it turned over. It was wisely said by Judge Brown in the case of Railway v. Crawford, 31 Southwestern Reporter, 178, above: "The sale, confirmation, payment, and deed clearly placed the title in the purchaser, and the court thereafter in continuing the property in the hands of the receiver held it as the property of the purchaser. The old company and the mortgagees under whose mortgage the foreclosure was had no longer had any right in the property."

In this case it is made manifest that, at the time this cause of action accrued, the property was not continued in the hands of the receiver by the court; but was kept there by the company and the receiver, directly in the face of the court's orders that it should be turned over to the company. After the sale of property in custody of the law, the property itself passes out of the hands of the court and it then deals only with the proceeds.

Mr. Thompson, in stating what he regards as the true theory in such cases, treats an action against a receiver as a proceeding in rem, the ultimate object being to reach the *property itself*. 5 Thomp. on Corp., sec. 7151. If the theory of this learned text-writer is sound, it will apply with double force to this case; for the reason that appellees not only seek to follow the fund itself, but to reach it in the hands of the party who owned it at the time the cause of action accrued and for whose benefit it was being operated.

What was done with the proceeds of the operation of the road during all the time the receiver held it after the sale, confirmation, and deed, does not appear from the record.

It has been held by this court that after a receiver's sale, and the confirmation of the court, the purchaser is entitled to the income of the property. Farmers Loan and Trust Co. v. Fidelity Trust Co., unreported.

We see no reason why there should be a difference between a sale by a receiver under order of the court and any other judicial sale. If an administrator should sell property under decree of the court, and the sale should be confirmed, the purchase price paid, and the deed delivered, and the officer should subsequently hold the property at the instance and for the benefit of the purchaser, we do not think it could be doubted that he would hold as agent of the purchaser, and that the latter would be entitled to the income of the property after the purchase was completed.

In the case of Edwards v. Gill it was held that a confirmation of the sale made by an administrator, under order of the court, related back to and conveyed title from the date of sale, and that the purchaser was entitled to the income of the property from that date. 5 Texas Civ. App., 203, citing Rorer on Jud. Sales, 2 ed. sec. 109; Taylor v. Cooper (10 Leigh, 317), 34 Am. Dec., 737; Evans v. Spargin (6 Grat., 107), 52 Am. Dec., 107. See 2 Jones on Mortg., secs. 1658, 1659, 1637; 12 Am. and Eng. Encyc. of Law, 219.

The title and right to possession and the income of the property be-

came vested in the purchaser in this case after the sale, confirmation, deed, and order of the court for delivery of possession. Such being the case, and the court by its order having divested itself of its custody as fully as it could do previous to the accrual of plaintiffs' cause of action, and Dillingham having retained actual possession and having operated the road, at the instance of and for the benefit of the purchaser, he was, in such acts, the agent of the railroad company, and the latter is bound.

2. Under the fourth assignment of error appellants complain that the court refused to grant them a new trial, on the ground that the evidence proved that the cotton was destroyed in the fire at Mud Creek without negligence on their part.

The cotton was shipped to Liverpool, England, and the bill of lading given by Charles Dillingham provided that he should not be liable for loss by fire. The cotton destroyed by fire at Mud Creek was in the wreck of a train, and the facts proved do not show that the servants of appellants were free from negligence. On the contrary, there was ample evidence to sustain the verdict, on the ground that such servants were negligent in not preventing the loss of the cotton by fire. Railway v. China Manufacturing Co., 79 Texas, 26; Railway v. Wilson, 79 Texas, 371; Railway v. Palmer, 30 S. W. Rep., 1109.

In the first named case, it is clearly held that while a common carrier, in a foreign shipment, not governed by the statutes of this State, may stipulate against liability from loss by fire, unless the negligence of the carrier or its servants caused or contributed to the loss; yet the burden is upon such carrier to show that the loss occurred by fire, and without negligence on its part.

3. Under the fifth assignment the same question is raised as above, in regard to the loss of cotton burned at Hearne.

There was sufficient testimony to sustain the verdict of the jury on the ground of negligence on the part of appellants and their servants in allowing the cotton to be burned at Hearne, and for the reasons above stated this assignment is not well taken.

4. The second assignment complains that the court permitted (over defendants' objections) plaintiffs to show by defendants' witness and local agent at Hearne, J. P. Palms, that said witness made an affidavit in which he stated that the origin of the fire which destroyed the cotton at Hearne was unknown; that it was supposed to be from a passing engine—for the reason that, as shown from the affidavit, the statement as to the cotton being set on fire by a passing engine was a mere supposition on the part of the witness.

This assignment is not sustained by the bill of exceptions as set out in appellants' brief, as it is there shown that the witness testified that he did *not* make such affidavit. Upon an examination of the record, we find that this must have been a clerical error, as the bill of exceptions set out in the record shows that he testified that he *did* make the affidavit. We treat it as a clerical error.

The defendant's counsel was cross-examining the witness. The wit-

ness was the local agent at Hearne, and had stated the time the cotton arrived in the yards, the location of the different tracks, the time of the fire, and many other things connected with it, and stated that he did not know its origin. It appears from the statement of facts that a part of his affidavit was read to the jury, and that the court instructed them not to consider it, except in so far as it might affect the credibility of the witness. It appears from the bill of exceptions that the plaintiffs' counsel asked the witness on cross-examination if he had not made the affidavit, and if he had not stated therein that the origin of the fire was unknown to him, but that he supposed the cotton was set on fire by one of the passing engines of the defendant, receiver; to which appellants objected on the ground that his suppositions were immaterial, inadmissible, and calculated to prejudice their cause. The court admitted the evidence, and instructed the jury that they would consider it only with reference to the credibility of the witness.

As original evidence, the *supposition* of this witness was clearly inadmissible. There was no conflict between his evidence as given on the stand and the affidavit, except that the latter went further and stated that he supposed that the fire caught from a passing engine.

The evidence should have been excluded, as such evidence should not be allowed to creep in under the guise of impeaching the witness, unless it would have that tendency. But, in view of the fact that the objection, as presented by appellants, is to the testimony of the witness on the stand, and not to the affidavit itself, which was read to the jury, and as the burden of proof was on appellants to show that a part of appellees' cotton was burned at Hearne without negligence on the part of the carrier, and that they wholly failed to show this, the error in the admission of this evidence is not sufficient to reverse the case. It might be conceded that the fire was caused by sparks from a passing engine, or that it was not so caused, and still appellants have failed to meet the burden upon them. If the jury obeyed the instructions of the court and considered the facts stated in the affidavit only upon the question of the credibility of the witness, then appellants could not have been materially injured by the evidence, for the reason that it did not differ materially from his testimony on the stand.

5. . Under the seventh assignment of error complaint is made of the judgment against the receiver, on the ground that the uncontroverted evidence showed that the receiver had been discharged. This assignment is not sustained by the record. It may have appeared that the receiver was discharged in the cases cited in appellants' brief; but we must determine this case from the record before us. Railway v. Strycharski, 35 S. W. Rep., 851; Id., 37 S. W. Rep., 415.

6. Appellees in their brief present cross-assignments of error, and complain that the court overruled their motion for judgment non obstante veredicto, for the value of the cotton destroyed by fire at Thornton.

Appellees in their brief concede, for the purpose of this appeal, that

the cotton burned at Thornton was without any negligence on the part of appellants or their servants; but it is claimed that the appellants have failed to show that the fifty-eight bales shipped from Plano were destroyed by that fire.

The testimony shows that 100 bales were shipped from Plano, as per bill of lading No. 42, and it was shown that of this shipment only forty-two bales reached the consignee. Appellees' petition to the United States Circuit Court asking leave to prosecute this suit as against the receiver in the State court, shows on its face that the claim is for cotton which they are informed and believe was destroyed by fire. The deposition of appellee Bath shows that he accepted the statements of the company, that this cotton was destroyed in the Thornton fire, and that he had been paid by the insurance company for it upon the proofs of loss so furnished by him, and he prosecutes this suit partly for the benefit of such insurance company.

This testimony, taken in connection with the other facts and circumstances proved, was sufficient to sustain the verdict of the jury upon this point.

We find no error in the judgment of the court in overruling appellees' motion.

The judgment below is affirmed.

                                                            *Affirmed.*

Writ of error refused.