AMERICAN EXPRESS CO. v. DUNCAN.
(No. 8511.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 27, 1917. On Motion for Rehearing, March 5, 1917.)

1. CARRIERS ⊂⊃119—ACT OF GOD—FIRE.
A loss by fire, unless caused by lightning, does not come within the exception of the act of God, and is chargeable against a common carrier.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 523–530.]

2. CARRIERS ⊂⊃114—DUTY TO DELIVER—STATUTE.
Under Vernon's Sayles' Ann. Civ. St. 1914, art. 707, providing that the liability of carriers shall be the same as by common law except as changed by statute, article 711, providing liability as common carrier shall exist from commencement of transportation till delivery, and article 712, providing that, if carrier at destination uses due diligence to notify consignee and goods are not taken, it shall thereafter be liable as warehouseman, the obligation of a common carrier as such continues until actual delivery or that which may be considered an equivalent or substitute therefor.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 608–620.]

3. CARRIERS ⊂⊃87 — CONSIGNEE'S DUTY TO REMOVE GOODS AT DESTINATION—DUE DILIGENCE.
A consignee who has goods shipped home to himself, but makes no effort to notify his folks while he makes the journey, requiring a week, on horseback, and who has actual notice the day after his arrival that goods have been received, but does not remove them because of inconvenience, cannot hold carrier liable as such for loss of his property by fire.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 323.]

4. CARRIERS ⊂⊃140—GOODS HELD AT DESTINATION—LIABILITY.
Where a consignee has failed to use due diligence to remove goods after notice of their arrival at destination, the carrier's liability thereafter is that of a warehouseman.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 609, 609½, 611–616.]

5. WAREHOUSEMEN ⊂⊃34(5)—LOSS OF GOODS BY FIRE — PRESUMPTIONS AND BURDEN OF PROOF.
Where goods in a warehouse are destroyed by fire, the burden of showing negligence is on the bailor, and is not presumed from occurrence of fire.
[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 76, 77.]

6. WAREHOUSEMEN ⊂⊃24(3)—EXTENT OF LIABILITY FOR LOSSES BY FIRE.
A warehouseman is liable for loss by fire occasioned by his negligence or the negligence of his employés.
[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. § 51.]

Appeal from Shackelford County Court; J. A. King, Judge.

Action by Claud Duncan against the American Express Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

A. A. Clarke, of Albany, for appellant. S. C. Coffee, of Albany, for appellee.

CONNER, C. J. The appellee, Claud Duncan, instituted this suit against the appellant, the American Express Company, to recover the sum of $350 alleged to be the value of certain personal effects, of which an itemized statement was made, which had been shipped from Littlefield, Tex., to Albany, Tex., on or about April 1, 1915, and which were never delivered to the plaintiff.

The goods in question were shipped by appellee in person at Littlefield and consigned to himself at Albany. The shipment was made on or about the 26th day of March, 1915, and it arrived at Albany in good condition on the 27th day of March, 1915. Appellant's evidence tended to show that upon arrival at Albany the goods were carefully stored in the building used by appellant as a warehouse, and that on the 29th day of March appellant, by its agent, duly addressed and mailed a notice of the arrival of said goods to the appellee, the notice being directed to him at Albany, Tex. The goods remained in the depot until the night of the 5th of April, 1915, when the warehouse and all of its contents was destroyed by fire, and appellant pleaded its liability to be that of a warehouseman only, and that it had been free from all negligence. The trial, however, resulted in a verdict for appellee in the sum of $200, and the appellant has appealed.

Appellee was an unmarried man, who, when at home, resided with his parents some 12 miles distant from Albany, Tex. Upon the delivery of his goods to the appellant company for transportation he traveled on horseback from Littlefield to his father's home, where he arrived on Sunday evening, April 4, 1915. He made no inquiry of the appellant company that evening, but the next

day about noon he did so, and was then informed over the telephone that his goods had arrived and were there in the depot. Appellee testified that it was 12 miles to the depot, that he could have gone after his goods and returned within two or three hours, but that he did not do so on the day of April 5th for the reason that it was not convenient, his father having some other use for his team.

[1, 2] A material question involved in the case is whether the appellant company, under the circumstances, was absolutely liable for the value of appellee's goods as a common carrier, or whether its liability was that of a warehouseman, to wit, only liable for the loss of the goods by fire in the event of negligence on its part. Generally speaking, the rule is not uniform in all of the states, but all authorities seem to agree that a loss by fire, unless it is caused by lightning, does not come within the exception of the act of God, and accordingly is chargeable against a common carrier. The obligation of the carrier includes the obligation of a safe delivery to the consignee, and its responsibility as a carrier continues until it has made actual delivery, or done that which may be considered an equivalent to or the substitute for such delivery, and the mere arrival of goods at their destination is not sufficient to reduce the liability of a carrier to that of a warehouseman. See H. & T. C. Ry. Co. v. Adams, 49 Tex. 748, 30 Am. Rep. 116. On this subject our statutes provide that the duties and liabilities of carriers in this state shall be the same as are prescribed by the common law, except where otherwise provided (Vernon's Sayles' Texas Civil Statutes, art. 707), but further provide (see article 711) that:

"Railroad companies and other common carriers having depots and warehouses for storing goods, shall be liable as warehousemen are at common law for goods and the care of the same stored in such depots or warehouses before the commencement of the trip or voyage on which said goods are to be transported, but shall be liable as common carriers from the commencement of the trip or voyage until the goods are delivered to the consignee at the point of destination."

The next article, 712, qualifies the liability thus imposed in article 711 by further providing that:

"If the carrier at the point of destination shall use due diligence to notify the consignee, and the goods are not taken by the consignee, and have in consequence to be stored in the depots or warehouses of the common carriers, they shall thereafter only be liable as warehousemen."

Appellant insists that the undisputed evidence shows that it used due diligence to notify appellee of the arrival of his goods by post card, and that therefore its liability undisputedly was that of a warehouseman and that the court erred in submitting the issue of negligence in this respect. We hardly feel prepared, however, to uphold this contention. It is true that under article 712, which we have quoted, it was only necessary, in order to reduce appellant's liability to that of a warehouseman, to "use due diligence to notify the consignee" of the arrival of his goods, and if it was admitted that the postal notification was duly addressed and mailed, as testified to, it might be that it should be held due diligence on appellant's part under the circumstances, inasmuch as it further appeared that between the date of the shipment of the goods appellee for several days was traveling over land over the country and admittedly made no call for his mail, and admittedly would not and could not have received the notice until shortly before the fire, but there was further evidence on the part of appellee to the effect that his mail was received by him together with that of his father's family, and the father testified specifically that they had not received any such postal card, and upon cross-examination of the witness who testified to the mailing of the notice he did not exclude a possibility that he may have lost it between the time of writing the notice and the time that he testified that the notice was deposited in the post office. If in fact the notice had been mailed, as related by the witness, the natural inference would be that in due course it would have been received by members of appellee's family, and their failure to so receive, together with the possibility suggested by the cross-examination of the witness, rendered, as it seems to us, the fact of mailing vel non issuable and one for the jury.

[3] Appellant further insists, however, that regardless of the issue of due diligence to notify appellee by mail of the arrival of his goods, such actual notice was shown by the evidence as had the effect of establishing appellant's status of that of a warehouseman rather than that of a common carrier, and, as presented to us, we find no satisfactory answer to the contention. The appellee testified on this subject that the shipment from Littlefield was, as he thought, on March 29th, and that he was some six or seven days on the road from Littlefield to Albany; that the goods left Littlefield a day before he did, and that he reached his home at Albany late in the evening of Sunday, April 4th; that the place he spoke of as being his home is the residence of his father; that he did not know when he reached home whether or not the goods had yet arrived at Albany, and—

"that it was on Monday, April 5th, when he first knew that the goods had arrived; that he so found out by telephoning the agent; that he had not prior to or after that time received any notice to the effect that the goods shipped had arrived; * * * that when he telephoned to the office of the American Express Company he talked with Mr. Finley, and that Mr. Finley told him the goods were there; * * * that he did not make any inquiry regarding the shipment until Monday, when he phoned the agent; * * * that there was telephone connection between the depot and his father's house, but that he did not communicate with Mr. Finley at all on Sunday; that the depot burned on Monday night, and that he knew on Monday the

goods were on hand at the depot; that at the time he talked with Mr. Finley over the telephone he was about 12 miles from Albany at his father's residence, and that there is a public road running from close to where his father lives to Albany; that he never received any written notice through the post office that the goods were there; that Albany was his post office at the time, had been for years, and was the post office of his mother, father, and sisters, and was the nearest post office to where they usually got their mail; * * * that one could go from his father's house to Albany in a hack in about 2½ hours and in a wagon in about 3 hours; that he came in a hack and could get there in 2½ hours, and that that would be about the usual and customary time; that he would have come after them Monday, but that he could get no team for the reason that his father's team was busy, and he could not get them until Tuesday morning."

B. F. Yoho, witness for defendant, testified to the arrival of the goods, that they had been stored in a suitable place in the depot building, etc., and that they were—

"lost in the fire at the time the depot burned at Albany, April 5th; that they were in the depot that day and up to 9 o'clock that night; that the building was entirely consumed by fire; that so far as he knew none of the goods were saved or taken out, and that he believed they were burned up; that the cause of the fire is not known; * * * that he considered the place where they were stored to be a reasonably safe one; that it was the usual and customary place to store express and that it was kept under lock and key."

Mr. R. H. Finley, another witness for the defendant, testified upon the subject under consideration substantially as Mr. Yoho, and that the goods were destroyed by fire which burned the depot, but that "he did not know" the cause of the fire.

The plaintiff's father, J. G. Duncan, testified, among other things, that he lived south of Albany about 11 miles, and was the father of Claud Duncan, the appellee, who when not otherwise employed made his home with him, the witness; that he remembered the circumstance of his son coming home in April, on the Sunday before the burning of the depot; that when talking with Claud Duncan the night he arrived home Claud stated that—

"the goods ought to be at the depot, and asked him (the witness) if he was going to town the following day; that he would be busy himself; that Claud asked him about his team; but that they made arrangements to go to town Tuesday."

It is thus seen that appellant offered evidence not only from which "due diligence to notify the consignee," as required by statute, might be deduced, but also showed without dispute that appellee was actually notified and apparently notified in time to have enabled him to have come and gotten his goods before the fire. As evidenced by the record, the theory of the trial seems to have been that appellee was entitled to a reasonable time after notification to go and get his goods, and that unless he was negligent in this respect he would be entitled to recover. This is doubtless true as a legal proposition, but if appellee desired to hold the railway company liable at all events as a common carrier for the loss of his goods by fire, it was incumbent upon him to at least use diligence in their removal. To accommodate his own convenience, he might, it is true, delay until such time as it was entirely convenient to him, but if the delay was occasioned by any such reason, the liability of the carrier would be changed from that of an absolute one to that of a warehouseman, which was liability only for a want of ordinary care for the protection and preservation of the property. In discussing this subject it is said in 4 R. C. L. § 223, p. 756, that:

"What constitutes a reasonable time for the removal of goods must, of course, vary with the circumstances of each particular case, and no fixed or definite rule can be laid down applicable to all cases by which the fact may be determined. But while the circumstances of the particular case may, in a great measure, be said to control the matter, it is not to be inferred from this that the extent of the reasonable opportunity afforded the owner is to be measured by any peculiar circumstances in his own condition and situation which may appear to render it necessary, for his own convenience and accommodation, that he should have a longer time or better opportunity than if he resided in the vicinity of the depot, and was prepared with the means and facilities for taking the goods away. This is fairly implied when it is said that the owner is entitled to only a reasonable opportunity to take his property from the possession of the company after the transit is terminated, and if he does not do it at the earliest practicable moment, he may thereby be deemed to have consented that it should remain in the possession of the company under the more limited liability of a warehouseman. For instance, a consignee cannot defer the taking away of goods in order to attend to other business matters of his own, no matter how important they may be. However, to prevent any misapprehension on this score, the reasonable time to which the consignee is entitled has in a general way been defined as such time as would enable one residing in the vicinity to inspect and remove the goods in the ordinary course and during the usual hours of business. When the facts are undisputed, the question becomes one of law to be determined by the court; but, where they are disputed and unsettled, the question must be submitted to a jury."

[4, 5] From the testimony quoted it will be noted that no reason apparently satisfactory was given for appellee's delay in securing a delivery of his goods. The reason given apparently amounts to no more than that it was not convenient for him with his father's team to go on Monday after he had been notified of the goods' arrival. It does not appear that he was without other means of transportation, or indeed that any real necessity existed for another use of his father's team. So that, as stated, as the record is presented to us, appellant's liability under the circumstances, at least after the actual notice to appellee, was that of a warehouseman, and under the evidence the jury might have been so instructed. Indeed, as the evidence is presented to us, a peremptory instruction in appellant's favor on the whole case would seem to have been authorized; for, while the rule as to common carriers is otherwise (see Railway

Co. v. Bath, 17 Tex. Civ. App. 697, 44 S. W. 595; Railway Co. v. Richmond & Tiffany, 94 Tex. 571, 63 S. W. 619), as presented here, appellant was only liable, as we have seen, as a warehouseman, and it accounted for the loss of appellee's goods by fire not shown to be attributable to negligence on its part. The rule under such circumstances is thus stated in 40 Cyc. 473:

"By the weight of authority, where goods in the hands of a warehouseman are destroyed or damaged by fire, the bailor has the burden of showing that the warehouseman was guilty of negligence; as a presumption of negligence does not arise from the mere occurrence of the fire."

In support of the text quoted numerous cases are cited, cases from Alabama, California, Illinois, Louisiana, Massachusetts, Mississippi, New York, North Carolina, and Tennessee; also 48 Cent. Dig, title "Warehouseman," §§ 76 and 77, and the following cases from our own state: T. & P. Ry. Co. v. Capps, 2 Willson, Civ. Cas. Ct. App. p. 35, § 36; T. & P. Ry. Co. v. Wever, 3 Willson, Civ. Cas. Ct. App. § 60, p. 85.

[6] In the first Texas case cited, the court says:

"Where goods in the care of a warehouseman are destroyed by fire, and this fact is shown, the warehouseman is not liable for the loss of the goods unless it be proved that the loss was occasioned by the neglect of the warehouseman, his agents, employés, or servants, and the burden of proving such negligence devolves upon the plaintiff"—citing W. & W. Con. Rep. §§ 118, 412, 414.

See, also, Railway Co. v. Winn, 132 S. W. 972.

The conclusions above noted would possibly authorize this court to reverse and render the judgment in appellant's favor, but we have concluded that this course should not be pursued, for the reason that it does not seem clear to us that the case was fully developed upon the theories we have suggested. It is accordingly ordered that the judgment be reversed, and the cause remanded for a new trial.

Reversed and remanded.

## On Motion for Rehearing.

After a careful consideration of appellant's motion we have finally concluded, in accordance with its prayer, that we erred in remanding this cause, and that it was and is our duty to reverse the judgment below and here render judgment in appellant's favor upon the facts and conclusions announced in our original opinion. As shown therein, and about which there is no dispute, appellee shipped his goods at Littlefield consigned to himself at Albany, Tex., on or about the 26th day of March, 1915. Appellee must have known that by due course of transportation those goods would soon arrive at Albany, where they in fact did arrive on the 27th day of March, 1915. The record wholly fails to show that he made any effort to notify his father or other person of the probable arrival of his goods, that they might be taken from the custody of the carrier, and that he pursued his way by horseback from Littlefield to his father's home near Albany, where he did not arrive until the evening of April 4th, some six or eight days after his goods had been shipped at Littlefield. He failed to testify that on that day he made any inquiry. He did, however, on the following day, to wit, April 5th, receive actual notice of the arrival of his goods in ample time to have on that day gone and taken them into his own custody. It was further shown without dispute that the goods were lost by fire on Monday night, April 5th, after appellee had notice of the arrival of his goods and after the time within which he might have received them into his own custody. As shown in our original conclusions, after notice the burden was upon the appellee by law to use diligence in the removal of the goods, or to show that the fire which destroyed them was attributable to the negligence of the appellant company. See, also, Thornton v. Daniel, 185 S. W. 585. Appellee was represented upon the trial below by able counsel, and he testified in person, as did also his father, and full opportunity apparently afforded to offer any and every fact upon the issues indicated that could be truthfully presented, and yet, as disclosed by the record before us, no sufficient or lawful excuse was shown for appellee's failure to take his goods before the fire, nor was any effort made to show that the fire was attributable to the negligence of the appellant company. Under such circumstances there can be no legal justification for remanding the case for a new trial. The only apparent reason therefor would be to afford appellee an opportunity to amend his evidence, and this, it is well understood, is rarely, if ever, done by an appellate tribunal. Of course, the loss of appellee's goods is regrettable, but under the facts as proven appellant was liable only as a warehouseman, and the record shows that it also suffered severe loss by a fire not shown to arise from fault or negligence on its part. It therefore, in a court of justice and by the rules of law formulated for the protection of all civil rights, cannot be held liable to compensate appellee for a misfortune that it suffered in common with him.

We conclude that our former order remanding this cause should be set aside, and that the judgment below be reversed and now rendered in favor of appellant.