## T. L. Ross v. McGowen ET AL.

(Case No. 1534.)

1. PRACTICE — STATEMENT OF FACTS.— When, from an inspection of the transcript, it appears that the statement of facts was signed by the judge and filed after the close of the term, it will be disregarded unless the record shows an order of court entered up during the term, allowing the statement to be made up and filed after adjournment.

2. PRACTICE.— The supreme court will not, as a general rule, revise charges given by the court below, when there is no statement of the facts in evidence brought up with the record. In such case it will be presumed that all evidence that could have been introduced under the pleadings to sustain the verdict was actually introduced; and if the charge is not so glaringly wrong, when considered in connection with the pleadings and verdict, as to leave no doubt that the verdict was the result of an improper charge, it will not be revised.

3. CASE APPROVED.— Armstrong v. Lipscomb, 11 Tex., 649, approved.

4. PRACTICE.— An appellant will not be heard to complain of an error which resulted to his benefit, and which was against a party who failed to appeal.

### ON MOTION FOR REHEARING.

5. CERTIORARI.— The supreme court will not, after the submission of a cause and after its decision, grant a rehearing and award a *certiorari* to perfect the record, when the motion to rehear is based on the defectiveness of the record, and when no excuse is offered to show why the defect was not discovered before the submission.

6. CASE APPROVED — SAME.— Davis v. McGehee, 24 Tex., 209, in which the above rule was acted on, approved.

APPEAL from San Jacinto. Tried below before the Hon. Edwin Hobby.

Appellees Henry and Margaret McGowen, as husband and wife, brought this suit against Ben McGowen and appellant, in form of trespass to try title, and for damages, to cancel deed, and recover one-third of one hundred and thirty-two acres of land alleged to be the homestead of plaintiffs Henry and Margaret. Defendant below, Ben, answered that he purchased the land of plaintiff Henry for $400, executing his note for purchase money, with vendor's lien, etc.; that plaintiffs Henry and Margaret abandoned the one hundred and thirty-two acres as their homestead, and had ever since had another homestead. Appellant answered by adopting plea of his codefendant below, Ben McGowen, and also filed his plea of intervention, pleading the sale of the one hundred and thirty-two acre tract by Henry to Ben for $400 on time; conveyance and vendor's lien reserved in the deed; that plaintiffs Henry and Margaret had abandoned the one hundred and thirty-two acres, and since sale of it to Ben they had a different homestead; that Henry, at the time he conveyed to Ben, purchased of intervenor and Wesley Ross two hundred and fifty-two acres of land for a homestead, and in part paid for it by transferring the $400 note to them, they deeding Henry McGowen the two hundred and fifty-two acre tract, where Henry and wife at once moved and adopted it as their homestead; lived on it two years, then sold it, conveying by deed — the wife Margaret by privy acknowledgment. Intervenor also set up fraud; that he was the legal holder of the vendor's lien note, being unpaid save $130; prayer in the alternative: (1) For judgment against Ben McGowen and foreclosure of vendor's lien; that lost deed from Henry to Ben be established by decree; that all the right or title of plaintiffs be vested in defendant Ben, or (2) divestiture of title out of the others, and vesting in intervenor. (3) General relief.

Plaintiffs demurred, specially excepted, and answered plea of intervention. Demurrers and exceptions of all parties overruled.

There was a jury, a verdict for plaintiff Margaret McGowen, and for the intervenor against Ben McGowen for "the amount due on the note." A judgment was rendered upon this verdict in favor of Henry McGowen and Margaret McGowen, and against Ben McGowen and T. L. Ross, defendants, and T. L. Ross, intervenor, for the land sued for by plaintiffs, and for costs of suit; and in favor of intervenor against Ben McGowen for $476.91, with ten per cent. interest thereon, together with his costs of suit. Defendants filed

motions for·new trial, which being overruled, they excepted and·
gave notice of appeal, and T. L. Ross assigned errors, filed bond,
and brought the case here by appeal.

The court charged the jury, "the homestead of a family shall not
be sold and conveyed by the owner, if a married man, without the
consent of the wife.   Such consent shall be evidenced by the wife
joining in the conveyance, and signing her name thereto, and also
by her separate acknowledgment thereof taken and certified before
an officer authorized to take such acknowledgment.     .   .   To
forfeit the right to a homestead on the ground of abandonment, it
should be shown to the satisfaction of the jury that the intention
was to leave it permanently and not to return, and the jury should
be entirely satisfied upon that point.   And if a new homestead has
not been acquired by the parties, the abandonment should be clearly
established.   If the wife voluntarily leave the former homestead
and accompany the husband to and accept a new one provided by
him, she cannot insist that her homestead rights still attach to and
control the abandoned premises.   But this must be willingly done
by the wife, and not the result of any undue influence upon the part
of the husband, or any threat made by him.

"The husband, being the head of the family, has the right to
select and designate a homestead for the family, and so if he acts in
good faith and not against the will of his wife, having alone the
good of the family in view, he has the right to abandon it.   But if
the husband, in fraud of the wife's rights and without her consent,
seeks by abandonment to withdraw the homestead from the exemp-
tion the law affords it, it would not ·be valid.   The declarations of
the husband or third parties, however false or fraudulent, do not
prevent the wife from claiming her rights to a homestead.   If you
believe, from the evidence in this case, that the plaintiffs Henry and
Margaret McGowen used and occupied an undivided interest in a
tract of land described in the petition,   .   .   .   and that while so
occupying it the plaintiff Henry sold and conveyed the same to Ben
McGowen, without the consent of the wife Margaret, you will find
for the plaintiffs, unless you believe that the Kirksey tract (the one
hundred and thirty-one acres) was abandoned by Henry and Mar-
garet as a homestead, as expressed in this charge, from all the facts
and circumstances of the case.   If you believe that Margaret vol-
untarily left the Kirksey tract, and accompanied her husband, and
accepted another tract of land as a homestead provided by her hus-
band, then, and in that case, you will find for defendants and inter-
venor Ross.   If you believe that Margaret McGowen left the

Kirksey place by reason of any threat from her husband, then you will find for the plaintiff Margaret."

The charge requested by intervenor, shown by bill of exceptions No. 1, and embraced in assignment, was as follows:      .   . "The question of abandonment is purely a question of intention. If, in this case, Margaret McGowen did not intend to abandon the Kirksey place at the time she left the same with her husband; and that subsequently her husband provided for himself and his said wife and their family a homestead other than the Kirksey place; and that said Margaret moved with her husband and family to such second homestead, dedicating the same as her homestead; and that she became satisfied with such second homestead, then, and in such case, the homestead rights of plaintiff Margaret in and to said Kirksey place were lost, and her deed to the same was not necessary to convey it, unless it was her separate property."

*James E. Hill*, for appellant.

I. The court erred in its charge to the jury as shown by bill of exceptions No. 1, to wit: (1) The law of abandonment is not given by the charge, and as enunciated is incorrect. (2) The charge fails to define what is a " homestead," and what is meant by " acquisition of a new homestead."   .   .   . (4) The charge as to the form of the verdict as rendered by the jury is not correct, is uncertain, and fails to define any rule by which any certain amount can be arrived at.   Cline *v.* Upton, 56 Tex., 322; Thorn *v.* Dill, id., 145; Allison *v.* Shilling, 27 Tex., 450; Woolfolk *v.* Rickets, 48 Tex., 28.

II. The charge of the court as to so-called " threats " by the husband is made prominent twice; this is not warranted by the evidence, and as presented misled the jury.   Sayles & Bassett's Texas Pl. and Prac., § 647 and p. 273.

*Davis & Sayles*, for appellees.

.   . III. The charge of the court as a whole was in apt accord with the issues and the facts in evidence, and though there was error, perhaps, in allowing the plea of defendant Ross in this action, yet it is an error he cannot and does not raise, and the judgment below, as between the parties to this appeal, cannot be affected thereby.   Thomas *v.* Williams, 50 Tex., 269–276; Eckhardt *v.* Schlecht, 29 Tex., 132, 133; Cross *v.* Everts, 28 Tex., 532, 533; Cox *v.* Shropshire, 25 Tex., 116, 125 (in which case Judge Bell gave a similar charge on abandonment, which Chief Justice Wheeler approved on appeal); and as to duress, Kocourek *v.* Marak, 54 Tex., 205, and Wiley *v.* Prince, 21 Tex., 639.

WILLIE, CHIEF JUSTICE.—It is urged by counsel representing the appellees in this cause, that the statement of facts found in the record should not be considered by the court, because it was made up and filed after the final adjournment of court, and no order had been made during term time allowing this to be done.

The term ended, as appears by the caption of the transcript, on the 19th of May, 1882, and the statement of facts was signed by the judge on the 23d, and filed on the 25th of the same month. These, therefore, occurred within ten days after the close of the court; but there does not appear in the transcript any order of the court entered up in term time, allowing the statement to be made up and filed after adjournment. This is an essential statutory requirement which must be complied with in all such cases, as we have already held in the case of McGuive v. Newhill, lately decided, and on the authority of that decision the present statement of facts will be disregarded, and the appeal considered as if it formed no part of the record.

The only assigned errors that we are asked in the brief of appellant's counsel to consider are the first and fifth; the one relating to the charge of the court, and the other to the proper conclusion to be drawn from the evidence. As there is no evidence before us, no notice can be taken of this fifth assignment. It has also been held in several cases by this court, that as a general thing we will not revise the charges of the court where there is no statement of the facts proved on the trial brought up with the record. This is the general rule, and the exceptions are few and well defined. It will be presumed that everything in the way of evidence that could have been legally introduced under the pleadings to sustain the verdict was actually proven on the trial; and if the charge is not so glaringly erroneous, taken in connection with the pleadings and the verdict, as to leave no doubt but that the finding of the jury was controlled by the improper instructions of the court, it will not be revised. McGaughey v. Bendy, 27 Tex., 534; Burt v. Alford, 22 Tex., 399; Birge v. Wanhop, 23 Tex., 441; Anding v. Perkins, 29 Tex., 348.

The rule was thus laid down in Armstrong v. Lipscomb, 11 Tex., 649: "When the facts as proved are not embodied in the transcript, the case stands here as if either no evidence had been introduced, or only such as had authorized the verdict; and that when facts to sustain the issue are not shown to have been proven, the instructions given or refused must be regarded as abstract propositions, and as such not authorizing a reversal of the judgment, when such judg-

ment was in fact the only one from the evidence, or rather from the want of evidence, which could have been rendered."

The allegations of the petitions of plaintiffs, filed in this cause, were amply sufficient to show that their homestead had never been abandoned, and to entitle them to the verdict which they obtained for its recovery. The charge of the court, so far from being glaringly erroneous, is conformable to the previous decisions of this court on the question of homestead abandonment. Cox *v.* Shropshire, 25 Tex., 116; Cross *v.* Everts, 28 Tex., 132, 133; Thomas *v.* Mullins, 50 Tex., 269; Woolfolk *v.* Rickets, 42 Tex., 358.

The charge asked by appellant and refused by the court, even if embodying a correct principle of law — upon which, however, we do not propose now to express an opinion — must be considered as an abstract proposition, unsupported by facts, and as such its refusal does not authorize a reversal of the cause. If, under the circumstances of this appeal, we must treat the pleadings of the plaintiffs below as fully proved on the trial, there was no fact in evidence to authorize the court to give this charge; for there is no such allegation as that the appellee Margaret McGowen ever dedicated or became satisfied with any other place as her homestead besides the one for which she brings suit.

Neither can this appellee complain of the charge of the court as to the kind of verdict the jury should render in behalf of the intervenors against the appellee Ben McGowen, nor of the form of verdict which they did render in this respect. This part of the verdict was in favor of appellant, who was intervenor below, and gave him all the monied judgment he was entitled to under the pleadings of appellees as against Ben McGowen, and the latter has not appealed, or in any manner complained in this court of any of the proceedings had in the cause.

We find no error in the judgment of the court below, and it is affirmed.

AFFIRMED.

[Opinion delivered February 6, 1883.]

ON MOTION FOR REHEARING.

WILLIE, CHIEF JUSTICE.— In deciding this case on a former day of this term, we disregarded the statement of facts embraced in the record because it was made up, signed and filed after the close of the term of the district court at which the cause was tried, without an order previously entered allowing this to be done. We examined the verdict and judgment, as well as the charges of the judge

of that court, with reference to the pleadings alone, and held that there was no error in the judgment and affirmed it. We are asked by the appellant to grant a rehearing for the reason that in the court below an order was actually entered up allowing the statement to be prepared and filed after the adjournment of the court, but by inadvertence of the district clerk it was not incorporated in the record. A certified copy of this order, together with the date of its entry, accompanies the motion, which shows that it was in due form and made in proper time. A *certiorari* is asked, to have the order incorporated in the record, so that it may be considered in case the motion for rehearing should prevail.

No excuse is offered as to why this defect in the record was not discovered before the cause was submitted, and why the *certiorari* was not asked to perfect it before the court was compelled to undergo the labor of examining the case under the supposition that no such order had been made in the court below. Inadvertence or inattention of the clerk to his duties in making up the transcript does not excuse an appellant for failing to perform his duty in bringing the appeal properly before this court. Due scrutiny of the record will enable him to discern defects in it, and have them remedied in time; and should the clerk refuse to make up the transcript properly, the appellant has his remedy to compel him to the performance of this duty.

This cause was tried in the district court on the 16th day of May, 1882; the transcript was made up and certified on the 20th day of December, 1882; it was filed in this court January 8, 1883, and was submitted for decision January 31, 1883. Abundant time was allowed appellant to see to the proper making up of the transcript; to examine it after it was made up, before filing in this court, and especially before making a submission of the cause; before submission, briefs were filed by the counsel for appellees, in which the defect above stated was called to the attention of the court, and necessarily to that of appellant's counsel, and we were asked to disregard the statement of facts.

It was not too late even then to ask for the *certiorari*, and had appellant done so the record could have been perfected, and the cause would have been considered as well upon the evidence as upon the pleadings. After a cause is once submitted upon a transcript supposed to be correct, as the parties have made no objection to it, and we have decided it upon such transcript, we cannot undertake to reexamine such cause because the counsel for either party discovers a defect in the transcript, which, if supplied, might possibly lead us to

a different conclusion. A mistake in the pleadings or facts of a single word might influence the decision. This discovered and remedied, a new opinion framed to suit the altered record might itself be set aside upon the discovery of some other error; and so on to numberless changes in the transcript and the decisions upon it. This practice cannot, of course, be allowed, and to prevent it the right to a *certiorari* must be limited to some point in the proceedings, which must not extend beyond the date of the submission of the cause to the court for decision. Indeed, this has been the rule of this court announced in frequent opinions of our predecessors, which, having been orally delivered, may not have come to the knowledge of the profession generally.

In the case of Davis *v.* McGehee, 24 Tex., 209, a mistake in the record was brought to the attention of the court after submission of the cause, and a motion for *certiorari* denied, although it was apparent from the papers accompanying the motion that the transcript was incorrect.

To prevent any future application of this character after the record is in our hands for decision, we have thought it proper to put our decision on this motion in writing, and the rule laid down in it will be hereafter rigidly enforced. The motion is denied.

DENIED.