### H. D. BREWSTER ET AL. V. STATE OF TEXAS.

Decided June 3, 1905.

**1.—Service of Citation—Quashing—Trial—Assignment of Error.**

An assignment alleging that the court erred in proceeding with the trial after having quashed the service of citation on defendants is not sustained where the return was duly amended before the conclusion of the trial, and defendants answered on the merits, and, for aught that the record discloses, prior to the presentment of the motion.

**2.—Same—Return of Service—Jurisdiction.**

Where the assignment alleged only that the court was without jurisdiction to proceed after the service of citation was quashed, and it appears that only the sheriff's return of the service was quashed, the assignment was not well taken, since the jurisdiction did not depend on the sufficiency of the return where there was, in fact, due service, and the return was amended before defendant's motion for new trial was acted on. (On rehearing.)

**3.—Continuance—Liquor Dealer's Bond—Immaterial Evidence.**

Where, in an action on a liquor dealer's bond, for breach thereof in permitting a minor to remain on the premises, the evidence showed him to be a minor, an application for a continuance, because of the absence of a witness to prove that the minor presented the appearance of being twenty-one years old, was properly overruled, since such evidence was not material to the issue.

**4.—Liquor Dealer's Bond—Selling to Minor—Collusion.**

Collusion among the relatives of a minor to bring about an infraction, through the minor, of a liquor dealer's bond, can not bind the State in a suit brought by it on the bond for such infraction.

**5.—Harmless Error—Impeaching Testimony.**

The court's refusal to exclude an answer of a witness, showing that he had been in jail for unlawfully carrying a pistol, was not prejudicial where his material testimony (as to an alleged minor being twenty-one years old) was only a matter of opinion and the minor's age was abundantly shown to be under twenty-one years.

**6.—Same—Exclusion of Immaterial Evidence.**

Where a witness was permitted to explain his reasons for wanting "to see the defendants get out of this suit"—an action by the State on a liquor dealer's bond—the exclusion of an additional explanation that he knew the prosecuting witness and his family to be a worthless crowd was not prejudicial, as such matter constituted no defense to the suit.

**7.—Trial—Explaining Absence of Witness.**

In an action on a liquor dealer's bond, wherein the age of an alleged minor was an issue, it was not error to permit the district attorney to state that the minor's mother was mentally unsound, to rebut any possible unfavorable inference that might be drawn from his failure to put her on the stand.

**8.—Assignment of Error too General.**

An assignment that "the court erred in refusing to grant defendants a new trial because the verdict of the jury is contrary to the law and evidence, as complained of in the twenty–eighth ground of their motion for new trial," is too general for consideration, especially where such twenty–eighth ground is not set out and the statement in support of the assignment merely refers to the "Statement of Facts, pp. 9 to 63."

**9.—Certiorari to Perfect Record—Appeal.**

It is the duty of an appellant to see that the transcript is correct before the case is submitted, and certiorari, in connection with a motion for rehearing, will be denied where the further facts desired to be shown would not authorize a change of ruling.

**10.—Liquor Dealer's Bond—Minor—Age—Remaining in Saloon.**

Evidence in an action on a liquor dealer's bond held sufficient to show the age of a minor, and that he was permitted to enter and remain in a saloon.

Appeal from the District Court of Palo Pinto. Tried below before Hon. W. J. Oxford.

*Albert Stephenson* and *J. C. Honts,* for appellants.

*F. H. Chandler* and *Wayne H. Lasater,* for appellee.

CONNER, CHIEF JUSTICE.—The State, through her proper officer, instituted this suit against appellant H. D. Brewster and the sureties on his retail liquor dealer's bond, alleging four infractions thereof, viz: three separate sales of intoxicating liquors to Boley Langley, a minor, and by permitting said minor to enter and remain on the premises where the sales occurred on the dates specified in the petition. The prayer was for a recovery of $500 for each breach of the bond charged, aggregating two thousand dollars. The trial resulted in a verdict and judgment for appellee in the sum of $500, because of, using the language of the verdict, "one infraction" of the bond "for permitting a minor to enter and remain."

It is undisputed that the appellant named was engaged in the business of a retail liquor dealer in Mineral Wells, Texas, as alleged, and as such gave the statutory bond declared upon with the other appellants as sureties. It seems also quite conclusive that Boley Langley was a minor, as alleged, and the jury's verdict to the effect that he was permitted to enter and remain in appellant's house or place of business is amply sustained by the evidence, so that the material questions presented on this appeal relate to matters of procedure on the trial.

It is first complained that the court erred in proceeding with the trial after having sustained appellant's motion to quash the service of the citation upon the sureties sued. No statement follows this assignment, and we would be authorized to disregard it. Besides, an examination of the record fails to disclose any error in the action com-

plained of. It is true the court appears by proper order to have sustained a motion to quash the service mentioned, but the order likewise granted the State permission to have the sheriff's return amended. No bill of exception appears to have been taken at the time, and for aught that appears to the contrary the amendment was in fact made before the conclusion of the trial. The record also discloses the fact that the sureties affected by the defective sheriff's return appeared, together with appellant, by an original answer filed September 6, 1904, which on its face seems to have been presented prior to the motion. At least we are unable to say that the motion to quash was presented before the answer in due order of pleading, the motion itself not appearing of record.

In the second assignment appellant complains of the action of the court in overruling their application for continuance. The application to continue appears to have been made because of the absence of some ten witnesses. As to some of these witnesses the diligence shown was insufficient, and the testimony of all of them, as set out in the bill of exceptions, appears to be immaterial in the light of the evidence on the trial and of the verdict of the jury. By the greater number of the absent witnesses appellants desired to prove that Boley Langley at the time of the alleged infraction of appellant's bond presented the general appearance of a person over the age of twenty-one years. Numerous witnesses testified on the trial to this effect, and the jury evidently gave appellants the full benefit thereof, in that the verdict sustained appellant Brewster's plea of the tenor that, if sales had been made to Boley Langley as alleged in appellee's petition, they were made in good faith, believing him to be at the time over age. Hiram Langley, the father of Boley Langley, Joe Langley, a brother and E. Medline all testified positively to the age of Boley Langley, and unmistakably fixed his status as that of a minor at the date of the sales established by the evidence. The fact, therefore, that Boley Langley presented the appearance of one of lawful age was immaterial upon the issue found against appellants. See Cox v. Thompson, 32 Texas Civ. App., 572.

The third assignment points out no error, and the fourth assignment is substantially disposed of in what we have said in disposing of the second.

The fifth, sixth and seventh assignments present the question of collusion, which can not bind the State.

The action of the court in refusing to exclude the answer of Frank Langley, that he had been in jail on the charge of unlawfully carrying a pistol on or about his person, seems entirely nonprejudicial. Frank Langley testified for appellants to the effect that in his "best judgment" Boley Langley was twenty-one or twenty-two years old. We think it evident from his whole statement that he had no accurate knowledge on the subject, and that he was but expressing his mere opinion of Boley Langley's age, and in the light of the unmistakable character of the testimony hereinbefore referred to that fixes Boley Langley's age, we think the ruling complained of, if erroneous, is entirely immaterial.

The error complained of in the tenth assignment is likewise harmless. The witness Robbins in fact was permitted to give an explanation of his

reason for desiring "to see the defendants get out of this suit," and the exclusion of the additional explanation that he so desired because he knew "the Langleys to be a worthless crowd and believed these suits to be a put up job," which was excluded by the court, could have had no effect beneficial to appellants. Such reason certainly constituted no defense to the suit. However "worthless" the Langleys may have been, on proof of the facts alleged in the State's petition, it was the duty of the jury to render the verdict they did, and we fail to find even a contention that the proof failed to show that Boley Langley was not permitted to enter and remain in appellant's place of business within the meaning of the law.

In the eleventh assignment complaint is made that the district attorney was permitted to state his reason for failing to put Mrs. Hiram Langley, the mother of the minor, upon the stand. The proposition asserted is, in effect, that he (the district attorney) was not qualified as an expert, and did not state the facts upon which he predicated his opinion that she was "mentally unsound." While the mental state of Mrs. Langley was not in issue, the record suggests that this testimony was permitted to meet the real or possible contention in behalf of appellants that the mother best knew the age of Boley Langley. If so, it was competent for the State to rebut any possible unfavorable inference that might be drawn from the failure to put the mother upon the stand. At all events, the ruling seems harmless.

We think the court's charge not subject to the objections urged thereto, and that it sufficiently presents the rule relating to the burden of proof.

The assignment that "the court erred in refusing to grant defendants a new trial because the verdict of the jury is contrary to the law and evidence, as complained of in the twenty-eighth ground of defendant's motion for a new trial," is too general for consideration, particularly in view of the fact that the twenty-eighth ground of the motion is not set out, and that in the statement in support of the assignment we are referred to the "statement of facts, Tr. pp. 9 to 63."

We conclude that no reversible error has been presented; that the evidence supports the verdict and judgment, and that the judgment should be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

In connection with the motion for rehearing appellants have filed an application for a writ of certiorari to perfect the record, so as to show the date upon which their motion to quash the sheriff's return on the citation to two of appellants, and the date upon which the amendment to said return was made and filed. The motion for certiorari, which is duly verified by affidavit of counsel, shows that appellants' motion to quash the return of the sheriff of Tarrant County, upon the citation to appellants R. L. Crowdus and D. F. Eggleston, was filed in the trial court upon the 6th day of September, 1904, and that the amendment to the return was not made until September 25, 1904, and not filed in the court until the next day. It is hence insisted that a perfected record will establish error in our conclusion on original hearing, to the

effect that it did not appear that the motion to quash had been filed prior to the filing of the answer of appellants, or that the amendment had not been made before the conclusion of the trial, which was on September 12, 1904.

The statute (Rev. Stats., art. 1410) provides for the delivery of the transcript to the party so desiring, and it has more than once been held that it is the duty of an appellant to see that the transcript is correct before the case is submitted. (Ross v. McGown, 58 Texas, 603; Railway Co. v. Scott, 78 Texas, 360; Hayslip v. Pomery, 32 S. W. Rep., 124.) It may therefore be well doubted whether a motion to correct the record should be granted on motion for rehearing in cases where, as here, the omitted facts are, at least, apparently material in the consideration of the very assignment of error relied upon, and to which they naturally relate. It is doubtless within our power to do so, and, under certain circumstances, our duty as well (Railway Co. v. Cannon, 31 S. W. Rep., 498); but, however this may be, we are of opinion that the present motion should be overruled for the reason, if for no other, that the desired facts would not authorize an alteration of our original conclusion on the question presented in the assignment of error, which assignment is to the effect that there was error in proceeding with the trial after having quashed the sheriff's return on the citation, the proposition under the assignment being substantially that the court had "no jurisdiction" to proceed to trial after the quashal of the return.

Admitting that the motion to quash was filed on September 6, as stated in the motion for certiorari, there is yet nothing in the record to show that such filing was prior to the filing of the answer. The opening paragraph of appellants' original answer, also filed September 6, is as follows: "Now comes H. D. Brewster, R. L. Crowdus and D. F. Eggleston, defendants in the above entitled and numbered cause, subject to the right to file motion to quash citation and service in this case and the court's action thereon, and answer as follows:". This certainly justifies the inference indulged on original hearing that, at the time of the filing of the answer, no motion to quash had been filed. The reservation in the answer goes to "the right to file motion to quash citation and service," and not to the right of insisting upon one already filed. Besides, while the action of the court was irregular, it appears from the record that it was the sheriff's *return* that was defective. It is the proper *service* of the citation that gave the court jurisdiction, and not the return. The return is but the evidence that service of the citation has been made, and, if defective, the court undoubtedly may permit the officer to amend it so as to accord with the true facts at any time during the term, which was the case here. (Rev. Stats., art. 1239; Kitchen v. Crawford, 13 Texas, 519, 520.) There is no denial of proper service, nor is it asserted that the amendment was false, or failed to show proper service, and its filing was during the term and before appellants' motion for a new trial was acted upon. We therefore conclude that the court was not without jurisdiction to proceed with the trial, as asserted in appellants' proposition.

Appellants, in their motion for rehearing, also very vigorously attack our conclusion that no reversible error was committed by the court in

excluding the answer of Frank Langley, to the effect that his confinement in jail (drawn out by appellee on cross-examination) was on the charge of unlawfully carrying a pistol on or about his person. It is insisted that confinement on such a charge is not proper matter of impeachment, and that the testimony of this witness was important on the issue of Boley Langley's age. It may be, as in effect conceded on original hearing, that the ruling was erroneous, but it confessedly went to the credibility of the witness only, and a re-examination of the record strengthens our conclusion that it should not cause a reversal. The only important issue to which his evidence related was that of Boley Langley's age, and as to that he thus testified in part: "I have known Boley Langley ever since we were children together. I could not say just how old he is, but my best judgment is he is twenty-one or twenty-two years old. I base that on my own age." Boley Langley testified: "I am seventeen years of age and a little over, the date of my birth being May 26, 1887." Joe Langley, a brother, testified: "Boley is seventeen years old the 26th of last May. He was born in 1887." Hiram Langley, the father, testified: Boley Langley was seventeen years old on the 26th of May, 1904." Emiline Medline, an aunt by marriage, testified that Boley Langley was a "little baby, just crawling around—a sucking baby—in the spring of 1888." Mrs. Joe Langley, sister-in-law, testified: "He (Boley Langley) is now about seventeen years old." A. J. Hughes testified that Boley Langley was about sixteen. Mrs. Hughes to the same effect. The force of the testimony quoted was not materially weakened by cross-examination or otherwise, and we think it entirely improbable that any qualified juror would have been influenced to disregard it by the testimony of Frank Langley, which was very indefinite, and, at best, a matter of opinion, even though unimpeached. We therefore conclude as before, that the error was harmless.

The statement in our original opinion, that "we fail to find even a contention that the proof failed to show that Boley Langley was not permitted to enter and remain in appellant's place of business within the meaning of the law," is also assailed. The contention now is that the evidence only shows that Boley Langley remained in appellant's saloon long enough to drink the beer sold to him. A careful re-examination of appellants' brief fails to disclose a single assignment of error that calls in question the sufficiency of the evidence to support the verdict or judgment, and, as the transcript presents the evidence, we think no such contention can be reasonably made. Boley Langley testified that he, with four other boys or young men, was in appellant's saloon twice, in the morning and evening, on the day charged. In the morning the party drank no beer, remained ten or fifteen minutes, had no business, but in the tongue of the witness, "just sot there awhile," and went out. In the evening the party returned, bought two one-half gallon buckets of beer, and "just stood 'round there and drank it." Was there on this occasion also some ten or fifteen minutes. On cross-examination he seemed inclined to deny the imputation of being drunk in the morning; his language is: "I don't think I was drunk when I was in there the first time that day." Joe Langley testified that he was passing in front of the saloon, saw the party named "in there,"

and went in and talked with them "I guess ten or fifteen minutes," when he went out, leaving the "boys" in the saloon. He further testifying said: "I had no business in there, and just went in only because I saw the boys in there as I was passing along the street, and I went in there just to pass the time. I did not want to see them about anything in particular, and I do not remember what we talked about. I think I asked them what they were doing in there, and they said they were just having a time. I think they had been drinking some, and I thought I could smell it on their breath, and they acted like they were drinking. I sat down in there on a beer keg, or on a plank there in the back room, I don't remember which. I think Jess Smith was sitting on a plank in there. Bob and Hez and Boley and Jess Smith were the only ones in there, and we were all talking—just gabbing like other people would—but I don't remember what we talked about. All I remember is that Jess wanted me to go in with them on the purchase of another bucket of beer, and I would not do it."

Loftin Brewster, the barkeeper, testified that he was in charge during the entire day in question, and, "if I sold Boley Langley any beer on or about the 21st day of June, or at any time, I do not remember it. . . . Never saw those boys in the saloon at any time to remember it now. . . . If he had come into the saloon I would have taken him to be twenty-one years old. As to this particular transaction I do not remember anything about it. . . . I do not say that Boley Langley was not in there." The appellant, H. D. Brewster, the proprietor, testified: "I do not recollect of ever seeing Boley Langley in the saloon there. If he was in there I do not remember it."

We find no other witnesses testifying on the point under consideration, and think it is thus made perfectly apparent that the evidence not only supports the verdict and judgment, but justifies our original conclusion.

The motions for certiorari and rehearing are overruled.

*Overruled.*

Writ of error refused.