MEMPHIS COTTON OIL CO. v. GOODE.
(No. 651.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 31, 1914. On Motion for Rehearing, Dec. 5, 1914.)

1. EVIDENCE (§ 119*) — COMPETENCY — "RES GESTÆ."

In an action to recover an amount paid under a contract to furnish feeding pens for stock, where the issue was whether the contract price was to be paid per month, or for the feeding term of three months, evidence that when plaintiff contracted he knew the price for feed at other oil mills, and in particular one in Oklahoma, and that he then gave defendant a telegram from that place, showing the feeding price there, offered to show plaintiff's knowledge and his representation to defendant, was admissible as original evidence, part of the transaction, or "res gestæ."

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 303–306; Dec. Dig. § 119.*

For other definitions, see Words and Phrases, First and Second Series, Res Gestæ.]

2. APPEAL AND ERROR (§ 882*)—PARTY ENTITLED TO ALLEGE ERROR — PARTY INVITING ERROR.

Where plaintiff, on his direct examination, did not testify as to the contents of a telegram, but that was brought out by defendant on cross-examination, error, if any, in admitting the evidence was one of which defendant could not complain on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

On Motion for Rehearing.

3. WITNESSES (§ 393*)—IMPEACHMENT—DEPOSITIONS.

In an action to recover money paid under a contract for feeding cattle, where a witness for plaintiff deposed that he had heard a conversation between plaintiff and defendant as to the contract for the feeding of stock, and stating the agreed price, his former deposition that he had heard "the latter part" of the conversation, stating the same agreed price, was not to impeach the witness, since in both questions the matter sought was the conversation or agreement as to the price, and since there was no contradiction in the answers.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1252–1257; Dec. Dig. § 393.*]

4. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR—ADMISSION OR EXCLUSION OF EVIDENCE.

Error, if any, in the admission of impeaching evidence, which tended to strengthen the theory of the appellant, held not reversible error on his complaint.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

Appeal from District Court, Hall County; J. A. Nabers, Judge.

Action by Wallace Goode against the Memphis Cotton Oil Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Taylor & Humphrey, of Henrietta, and Presler & Thorne, of Memphis, for appellant. Madden, Trulove & Kimbrough and R. E. Underwood, all of Amarillo, and J. M. Elliott, of Memphis, for appellee.

HUFF, C. J. The appellee, Goode, brought suit against appellant, Memphis Cotton Oil Company, upon an alleged contract, to the effect that appellant agreed to furnish feeding pens for 1,000 head of steers at 60 cents per head, for the feeding term, which is alleged to be about 90 days. He alleges further, after the cattle had remained on feed for about that term, he attempted to ship them out, but that appellant refused to permit him to do so unless he would pay 60 cents per month, which they claim was the contract price for the use of the pens, amounting to the sum of $1,892.44; that, in order to get possession of his cattle, he entered into an agreement with appellant to deposit that sum in the bank to abide a settlement and adjustment of the controversy, but they had failed or refused to adjust it, and hence the suit.

The appellant answered that the contract price to be paid for the use of the pens was the sum of 60 cents per head per month while said steers remained in said pens. The case was submitted to a jury upon special issue, which was as follows:

"What agreement, if any, was made between the parties hereto as to what plaintiff should pay for the use of the pens and water and other facilities testified about? That is to say: Was it understood between plaintiff, Goode, and A. C. Hall that plaintiff would pay 60 cents per head per month for the use of said pens and water and yard facilities testified about; or was it the understanding between said parties that plaintiff would pay 60 cents per head for the term for the use of said pens, water, and facilities?"

The jury answered:

"We, the jury, find that the price to be paid for the pens, etc., was 60 cents per head for the term."

Upon this finding the court entered judgment in favor of plaintiff, appellee herein,

---

against the defendant, appellant, for the sum of $1,261.62, and from this judgment the appeal is prosecuted.

The first assignment of error is substantially that the court erred in overruling and in not sustaining the defendant's objections to the testimony of the plaintiff, Wallace Goode, which is hereinafter set out by us. Goode had testified that he went to Memphis to see about procuring pens and making the contract, and that while there he called upon A. C. Hall, the manager of the company, and entered into the contract as claimed by him. The testimony objected to is set out in the bill of exceptions as follows:

"Q. Did you know, at the time you contracted for the feed at Memphis, what you could get feed pens for at other oil mills in this country? A. Yes, sir. Q. Did you know at that time what you could get feed pens for at Chickasha, Okl.? A. Yes, sir. Q. What could you get feed pens for there?"

And thereupon the defendant objected to the last question and the answer thereto for the reason that it was bound to be based on hearsay—was not tending to prove any issue in the case. It was not shown that the same conditions existed at Chickasha that existed at Memphis, and it was wholly irrelevant and immaterial, and the proper predicate had not been laid for the introduction of such testimony, and the court overruled all such objections, to which ruling the defendant then and there excepted, and thereupon plaintiff's counsel asked the said plaintiff, Goode, the following question:

"Did you inform Mr. Hall what you could get feed pens for at Chickasha? A. Yes, sir; and showed him a telegram from there. Q. What could you have gotten pens for at that season at Chickasha, Okl.?"

And thereupon defendant's counsel objected to said last question and the answer thereto for the reasons heretofore stated, and the court overruled said objection and permitted the witness to answer as follows:

"A. Fifty cents per feeding term. Q. Did you know at what price you could get feeding pens for at other places?"

And thereupon defendant objected to the said question and the answer thereto for the reason heretofore stated in this bill, and the court overruled said objection and permitted the witness to answer said question as follows:

"Yes, sir; two or three other places. Altus, Okl., was one, and Hobart another. I did not tell Hall what I could get the pens for at these places so much as I did the one I got the telegram from. I let him have the telegram. I asked him to retain the telegram and show his company."

To which questions and answers the appellant reserved its bill of exceptions.

It appears upon cross-examination by appellant the witness testified as follows:

"The only information I gave Mr. Hall about what I could get the pens at Chickasha was based upon that telegram and nothing else. It was purely information I received by a telegraph message signed by some one else; signed by the mill company—somebody over there at Chickasha. That telegram stated that I could have the pens for fifty cents per head for the term, I think."

Upon redirect examination the witness testified substantially the same as he did upon his direct examination, but there appears to have been no bill of exceptions taken to his testimony upon redirect examination.

[1] The issue in this case was, not the value of the use of the feed pens per head, but what was the contract per head? Was the contract price to be paid per month or per term? This was the issue. Perhaps if the issue had been its value, the objection might then be tenable that the statement was hearsay. We think if what others paid or offered to pay was considered by the parties at the time and entered into the negotiations of the parol contract, it would be original testimony. It is not every declaration made by others that is hearsay. As for instance: Parents suing for damages for the death of their son, his statement before his death that he would remain and take care of them is admissible, as showing a desire and the intent to support the parents, and hence probable pecuniary aid which he would have given. Railway Co. v. Knight, 45 S. W. 167; Railway Co. v. White, 23 Tex. Civ. App. 280, 56 S. W. 206; Railway Co. v. Van Belle, 26 Tex. Civ. App. 511, 64 S. W. 397.

"So where proof is to be made of a parol contract, or where, for other reasons, the statements of a person are relevant, such statements may be proved by third persons, who were present, the same as by the one who used the language." Elliott on Evidence, § 328, vol. 1.

Mr. Jones on Evidence says:

"It is hardly necessary to cite authorities to the obvious proposition that when proof is to be made of a parol contract, or when, for other reasons, the statements of a person are relevant, such statements may be proved by third persons who were present as well as by one who used the language. In such case the statements are not hearsay but substantive evidence." Jones on Evidence, § 300.

"When declarations or acts accompany the fact in controversy, and tend to illustrate or explain it, they are treated, not as hearsay, but as original evidence; in other words, as part of the res gestæ. * * * It is hardly necessary to add that when the declarations form part of the contract, or the performance of a contract, they are relevant and will be received." Jones on Evidence, §§ 344 and 235.

In Goldman v. Blum, 58 Tex. 630, 641, the court said:

"What was said and done by the parties while the business was being arranged, and while the transaction was then depending et dum fervet opus, is admissible in evidence as part of the res gestæ, and is considered as well calculated, in the absence of direct evidence, to shed light on the real character of the transaction."

We cite the following cases as illustrating the rule: Ft. Worth Publishing Co. v. Hitson, 80 Tex. 216, 14 S. W. 843, 16 S. W. 551; Sparks v. De Bord, 110 S. W. 757; Fellman v. Smith, 20 Tex. 99; Britt v. Burghart, 16 Tex. Civ. App. 78, 41 S. W. 389.

It will be observed from the bill of exceptions that the witness did not answer

what he could get feed pens for at Chickasha until he testified he informed Hall, who made the contract with Goode, of that fact. He testified he showed and gave Hall the telegram, who kept it to show his company; but the witness did not testify as to its contents on direct examination. On cross-examination, in order to show the witness had no knowledge of the price for the use of pens at Chickasha, and that what he knew was based upon the telegram, appellant sought to show that such knowledge was based alone upon the telegram, and it was then he stated, in answer to appellant's cross-examination, the contents of the telegram.

[2] If the witness could not have testified under the predicate lain to the contents of the telegram upon his direct examination, which we do not at this time decide, he did not testify on direct examination thereto, but such testimony was brought out by the appellant upon cross-examination, of which we do not think it can complain at this time.

Facts happening just before and after the principal transaction, and tending to show knowledge or intent of the party, are relevant. Horton v. Reynolds, 8 Tex. 284. The testimony was not offered, as we understand, to prove the value for the use of the pens at Chickasha, but to show at that time Goode knew and represented to Hall that he did. This representation to Hall was not hearsay but was part of the transaction—the inducement to the contract part of the res gestæ. It is a circumstance incident to and connected with the contract, explaining why the price was fixed at 60 cents per head for the term, instead of 60 cents per head per month. The declarations or statements were not made by others out of hearing of appellant, but were made to appellant, which induced the making of the contract for the term, instead of by the month. We overrule the first assignment of error.

The second assignment of error is also overruled. If there was error in the particulars complained of, which we do not now decide, it was immaterial and could not have affected the case.

The case will be affirmed.

## On Motion for Rehearing.

It is earnestly insisted that we were in error in holding that the trial court properly admitted the testimony set out in the original opinion. Appellant cites us to the case of Chilson v. Oheim, 171 S. W. 1074, the opinion in which was rendered by the Court of Civil Appeals, Second Supreme Judicial District, October 31, 1914. A copy of that opinion has been furnished us by appellant. We do not think that case in point on the issues here involved. That court held certain checks not admissible, which had been given by Chilson to one Moore, who was the tenant of Chilson, and who had been furnished the item sued for by O'Heim, which Chilson had

promised to pay. The checks were held not admissible because falling under the rule excluding testimony res inter alios acta. Such is not the nature of the testimony here. The declarations here admitted were facts or statements between the parties to the contract. True one of the parties purported to quote the price for which feed pens could be had elsewhere, but he used this price as a means to procure the agreement as he contended it was; at least it was a circumstance tending to show that fact.

Appellant apparently overlooks the fact that the price for which pens could be obtained elsewhere was made a part of the negotiations between the parties at the time of making the oral contract in question. Neither do we think our statements in the former opinion in conflict with the cases of Carver v. Power State Bank, 164 S. W. 892; Paine v. Argyle, etc., Co., 133 S. W. 895; Kocher v. Mayberry, 15 Tex. Civ. App. 342, 39 S. W. 604. We did not hold that in no case could the value of pens elsewhere be shown if the suit was one for the reasonable value of the pens, but we said that, if this had been a suit for its value instead of the contract price, the objection made might then have been tenable. We referred to the "objection" that the same conditions were not shown at the other places, and not to the fact that "value" under the proper predicate could be proven. We refer to this matter for the reason that appellant appears to misconstrue our views as we tried to express them, and to prevent a like construction by others. This identical testimony, the admission of which was assigned as error, was given by Goode upon his redirect examination, without exception thereto, and is in this record without objection. For this reason, as well as for the reasons heretofore given, we adhere to our former holding.

[3] Appellant urgently insists on its second assignment of error in its motion for rehearing, and urges that we should hold the action of the court, in admitting the testimony complained of, as error. We saw no necessity for discussing or deciding the rule on the question of practice presented by the assignment, as we then found that no injury could have resulted to appellant therefrom. The matter complained of in the second assignment relates to the answer of the witness A. D. Wilson to the sixth interrogatory, in his deposition, taken the 2d day of August, 1913, and also his answer to the sixth interrogatory, taken July 17, 1912, both of which were offered by the plaintiff, appellee herein. The latter interrogatory and answer thereto had been therefore read in evidence by the defendant, appellant herein. It was stated by appellant's counsel, at the time the two answers were offered, that they were offered for the purposes of impeaching the witness. The principal objection to such action was that a proper predicate had not been laid; that it

was immaterial, etc. The question in the second deposition asked the witness if he heard a conversation between appellee and A. C. Hall, the manager of appellant, at the house of Hall, in Memphis, Tex., with reference to appellant company furnishing pens for the cattle, etc., and, if so, state what it was. In answer to the question in the first deposition, "I heard such a conversation;" and then testified that the price agreed upon for the use of the pens, etc., was 60 cents per head per month. In the second deposition he answered, "Yes, I heard a portion of such conversation; I heard the latter part of this conversation;" and proceeded to give what each said with reference to the price, and gave the price as agreed upon for the pens the same as that stated in answer to the first deposition. The appellee claimed that the impeaching part of the statement, or the contradiction therein, was in saying in one that he heard such a conversation and in the other that he heard a part or the latter part of the conversation. When the interrogatories are considered in connection with the answer, there was no contradiction. In both questions the matter sought was to get at the conversation or agreement as to the price of the pens. The fact that appellee's counsel contended that one impeached the other, and that he offered it for the purpose of impeachment, did not make it impeaching testimony. The evidence offered by appellee operated to the benefit of appellant. The jury could not have found that one impeached the other. The trial court doubtless regarded the evidence as being in the interest of appellant and as proving the issue contended for by appellant. The testimony, if considered by the jury, could not possibly have injured the appellant. The jury was not warranted in disregarding the evidence because of any contradictory statement in the two answers. There is none as is apparent when the questions and answers are read together. There was nothing in either of the answers that discredited the witness. Simply because a lawyer asserts black is white, we will not presume a jury accepted such a statement as true when the evidence is that it is black.

[4] If, therefore, the court was in error in admitting the two interrogatories and the answers thereto, it was not necessarily a material one. Railway Co. v. Bath & Co., 17 Tex. Civ. App. 697, 44 S. W. 595; Brewster v. State, 40 Tex. Civ. App. 1, 88 S. W. 858; Railway Co. v. Fitzpatrick, 91 S. W. 355, 359. The admission or exclusion of evidence tending to strengthen the theory of the complaining party should not reverse the case upon the complaint of appellant. Ingalls v. Orange Lumber Co., 56 Tex. Civ. App. 543, 122 S. W. 53. We cannot believe the admission of the testimony, of which complaint is here made, could possibly have injured the appellant. The testimony in this case we think amply

sufficient to sustain the verdict of the jury, aside from Goode's testimony of the terms of the contract made with Hall for appellant. Appellant, after Hall had made the contract, sent to appellee a telegram confirming the contract, and, as we interpret the message, it recognized the contract as sworn to by the appellee, especially so when interpreted in the light of the facts proven surrounding the transaction.

The motion for rehearing is overruled.